UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

THOMAS DUNN and THELMA DUNN, )
)
    Plaintiff(s), )
)
  vs. ) Case No. 4:07-CV-01875 JCH
)
NEXGRILL INDUSTRIES, INC., )
)
    Defendant(s). )

**MEMORANDUM AND ORDER**

This matter is before the Court upon Defendant Nexgrill Industries, Inc.'s Motion to Bar the Testimony and Opinions of Plaintiffs' Expert Randy Bicknese (Doc. No. 47), filed on December 22, 2008. This motion is fully briefed and ready for disposition.

**I.    Background**

On August 24, 2006, a fire occurred at the residence of Plaintiffs Thelma and Thomas Dunn. (Amended Complaint, Doc. No. 23, ¶¶ 5, 7). Plaintiffs allege that the fire was caused by a defect in a "Jen Air Barbeque Grill" [sic], which was designed, manufactured and sold by Nexgrill Industries, Inc. (Id., ¶¶ 6,7). Plaintiffs have named at least three experts in support of their theory, including Mr. Richard Hewitt, Dr. Lloyd Brown and Mr. Randy Bicknese.

**II.    Legal Standard**

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

See Clark v. Heidrick, 150 F.3d 912, 915 (8th Cir. 1998). Doubt regarding "whether an expert's testimony will be useful should generally be resolved in favor of admissibility." Id. (citation and internal quotation omitted). In Daubert, the Supreme Court explained that in examining an expert's opinions for admissibility, trial courts should consider the following criteria: (1) whether the theory being offered by the expert has been tested; (2) whether the theory has been subjected to peer review, publication, or analysis by others considered experts in the field; (3) whether the theory has a "known or potential rate of error"; and (4) whether the theory has been generally accepted by others in the field. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 593-94, 113 S. Ct. 2786, 2796-97 (1993). "The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001) (citing Daubert, 509 U.S. at 592, 113 S. Ct. at 2796). "'The exclusion of an expert's opinion is proper only if it is so fundamentally unsupported that it can offer no assistance to the jury.'" Sappington v. Skyjack, Inc., 512 F.3d 440, 448 (8th Cir. 2008) (quoting Wood v. Minn. Mining & Mfg. Co., 112 F.3d 306, 309 (8th Cir. 1997)).

**III. Discussion**

    **A. Randy Bicknese's Qualifications**

The parties do not seem to dispute that Bicknese has the qualifications to evaluate whether the fire at the Dunn residence was caused by the subject grill, and his resume indicates that he has worked and experimented extensively in the area of expertise for which his testimony is offered. As described by Plaintiffs, Bicknese has extensive experience performing forensic evaluations of the causes of fires, including those in gas barbeques.[1] During his time at Schaefer Engineering, he has

---

[1] Specifically, Bicknese has been employed as a mechanical project engineer by Schaefer Engineering, Inc. for the past four years and specializes in forensic work with an emphasis in "vehicular accident reconstruction, gas-fired, oil-fired, and wood-burning appliance fire evaluation

worked on over one hundred cases involving a gas appliance where he determined whether or not the "mechanical components" caused the fire. (Response in Opposition, p. 4). Further, Bicknese stated that he has worked on twenty to thirty assignments related to whether a barbeque grill caused fires at residences. Id., pp. 4-5.

B. The Barbeque Grill Operation

The barbeque grill operates by the combustion of propane vapors. (Response in Opposition, p. 5). Liquid propane is stored in the propane tank until it is delivered to the manifold through a regulator hose assembly. Id., pp. 5-6. A side hose also routes gas from the manifold to the side burner controls. Id., p. 6. Propane vapors are delivered to the three main burner control valves via the manifold. Id. A heat shield is located above the propane tank to protect the tank from heat from the bottom of the grill and from the grease tray during normal cooking. Id.

The crux of Plaintiffs' theory is that the "regulator hose assembly can come in direct [contact] with the grease tray and/or its supports in certain configurations." Id. Based upon his testing, Bicknese opined that "the fire originated within the barbeque grill on the Dunn's deck and the probable ignition source for the fire was the operating burner of the gas grill, which ignited propane leaking from the grill's propane distribution system while the grill was in use." (Doc. No. 53-2, ¶13).

---

and mechanical design analysis." (Response in Opposition to Defendant Nexgrill's Motion to Bar Testimony of Plaintiff's [sic] Expert Witness Randy Bicknese ("Response in Opposition"), Doc. No. 53, pp. 3-4). From April 2004 to August 2004, Bicknese owned R&D Contract Engineering Services and provided consulting services on mechanical and electrical engineering projects for companies. (Id.) From September 2001 to April 2004, Bicknese worked as a manufacturing project engineer for Wainwright Industries, Inc. on the design and manufacuring process developement of automotive and aerospace components and systems. (Id.) Bicknese was a senior design engineer for Cooper Industries from December 1996 until August 2001, where he provided design, product development, and manufacturing engineering support for manufacturing operations that produced electrical and electronic circuit protection equipment. (Id., p. 4).

Defendant argues that Bicknese did not perform the testing under conditions substantially similar to those at the Dunn residence on August 24, 2006. Bicknese positioned the propane hose in a manner that had the propane hose touching the grill's grease tray when he ran the test. Plaintiff admits that Bicknese tied the hose in place for the test but states that "the hose freely went into that configuration by normal movement of the propane tank." (Response in Opposition, p. 9).

### C. Bicknese's Testing

#### 1. Eighth Circuit Standard for Experimental Testing

Generally, the Eighth Circuit has stated that the rule for admissibility of experiment tests in product liability cases as follows:

> The admissibility of evidence of experimental tests rests largely in the discretion of the trial judge and his decision will not be overturned absent a clear showing of an abuse of discretion. A court may properly admit experimental evidence if the tests were conducted under conditions substantially similar to the actual conditions. Admissibility, however, does not depend on perfect identity between actual and experimental conditions.

McKnight by & through Ludwig v. Johnson Controls, 36 F.3d 1396, 1401 (8th Cir. 1994) (citing Champeau v. Fruehauf Corp., 814 F.2d 1271, 1278 (8th Cir. 1987)). The Eighth Circuit, however, has also held that "where the experimental tests do not purport to recreate the accident, but instead the experiments are used to demonstrate only general scientific principles, the requirement of substantially similar circumstances no longer applies." McKnight by & through Ludwig, 36 F.3d at 1401 (8th Cir. 1994)(citing Champeau, 814 F.2d at 1278); Fusco v. General Motors Corp., 11 F.3d 259, 264 (1st Cir. 1993) (when the "scientific principles label" is attached, courts usually do not inquire regarding "similarity of conditions but only whether the test was properly conducted").

#### 2. Plaintiffs' Argument

In Plaintiffs' Sur-Reply to Defendant's Reply to Plaintiff's [sic] Memorandum in Opposition to Defendant's Memorandum to Exclude Randy Bicknese ("Sur-Reply"), Plaintiffs claim that

- 4 -

Bicknese's testing was done to demonstrate general scientific or technical principals, not to recreate the incident at issue. (Sur-Reply, Doc. No. 56, pp. 2-3). Plaintiffs argue that "there is no concern that the tests conducted by Mr. Bicknese are intended as a reenactment of the incident, or that they will create a risk of misunderstanding." (Sur-Reply, p. 3). Plaintiffs cite Burns v. Ford Motor Co., No. 06-5201, 2008 U.S. Dist. LEXIS 5625 (W.D. Ark. Jan. 24, 2008) to support this position: "When 'experimental testing' is a component of an expert witness opinion, one of two situations may obtain. If the testing is intended to reconstruct the incident in question, i.e., to show how it happened, substantial similarity of conditions is required. If the testing is intended to demonstrate general scientific or technical principles, this requirement no longer applies." Id., at *8 (citing McKnight by & through Ludwig, 36 F.3d at 1401).

In Burns, the plaintiff Holly Burns was injured in a rollover accident involving a Mercury Mountaineer, a Ford Motor Company product. Burns, 2008 U.S. Dist. LEXIS 5625, at *2. Burns alleged that the Mountaineer had defects that caused the rollover accident and Ford negligently failed to warn of these defects. Id. Burns identified Dr. Stephen Batzer as an expert to testify in support of her design defect claim. Id., at *3. Ford challenged Dr. Batzer's opinion because it was based on "experimental tests" not conducted under conditions substantially similar to those surrounding the accident at issue. Id., at *4. Dr. Batzer's opinion relied upon three experimental tests conducted on Volvo XC90s. Id., at *9-10. The Burns court held that Dr. Batzer's opinions could be allowed because the experimentation was utilized to demonstrate scientific principles and it would not be confused with the plaintiff's accident. The Burns court noted that the experiment was conducted on a Volvo, not a Mountaineer. Id., at *10. The experiments were not conducted by anyone employed by or on behalf of Burns but rather were done on behalf of Volvo to demonstrate the performance of its product. Id. Dr. Batzer explained that the experiments he relied on were "standardized tests

- 5 -

used in the automotive industry to evaluate the ability of a vehicle to withstand damage during rollover accidents." Id., at *13.

### 3. Application to This Case

This Court acknowledges that expert testimony may be based upon experiments that are solely to demonstrate scientific principles, and do not recreate events. See Burns, 2008 U.S. Dist. LEXIS 5625 at * 8-10. In Burns, the testing was used to prove that the Mountaineer could have been designed more safely, as demonstrated by the Volvo. See id., 2008 U.S. Dist. LEXIS 5625, at *10. The expert testing was performed to prove that a safer alternative was possible. Id.; see also Whitten v. Michelin Americas Research & Dev. Corp., 2008 U.S. Dist. LEXIS 60415, *19-23 (W.D. Tenn. July 25, 2008) (admitting an expert opinion based on testing that was not "substantially similar" to the subject accident but utilized an "alternative design").

Here, in contrast, Bicknese's testing appeared to be done to recreate the fire at the Dunn's residence to determine the cause of the fire, not to test scientific principles. Notably, Bicknese used a barbeque grill that was the same model and year as the Dunn's barbeque grill. (Memorandum of Law in Support of Motion to Bar the Testimony and Opinions of Plaintiffs' Expert Rnady Bicknese ("Memorandum in Support"), Doc. No. 48, pp. 1, 4).

The grill and the testing performed, however, were not substantially similar to what occurred at the Dunn residence. Bicknese modified the grill by re-routing its regulator hose and using a plastic tie-down to hold the hose in an unnatural position. (Memorandum in Support, pp. 7-8; Doc. No. 42-2). Bicknese also stopped the fire before it could proceed according to the timeline of the events at the Dunn residence. According to the timeline described by the Dunns, the grill stopped being used by 7:00 p.m., but the Dunns did not discover the fire until 9:42 p.m. (Memorandum in Support, p. 3). Bicknese's testing, however, did not comport with this timeline. Bicknese's initial testing lasted

only 20 minutes and did not account for the timing of the fire. (Reply, p. 4). In addition, according to Bicknese's set-up, the regulator hose on the exemplar grill nearly was engulfed in flames after just 50 minutes of testing. See Memorandum in Support, p. 4, Exhibit I, Doc. No. 48-2; Reply, p. 7. The testing did not show that the regulator hose could burn for two and a half hours or more.

This Court believes that, given the type and circumstances of Bicknese's testing, the jury would likely be confused by the results. See Fusco, 11 F.3d at 264 (affirming district court's exclusion of a demonstration because the "demonstration was rife with the risk of misunderstanding. ... [T]he drama of the filmed recreation could easily overcome the logic of the distinctions."). The tests performed by Bicknese "clearly were not limited to a demonstration of scientific principles in the abstract." McKnight by & through Ludwig, 36 F.3d at 1403. Bicknese set up an exemplar grill and caused a fire to develop in a manner that could be confused with the fire at the Dunns' residence. Accordingly, this Court rejects Plaintiffs' assertion that the evidence from Bicknese's experiments was offered only to demonstrate general scientific principles and, therefore, was not required to meet the substantial similarity requirement. See Fusco, 11 F.3d at 264 ("the risk of misunderstanding by the jury ... gives rise to the special requirement to show similar conditions").[2]

Thus, Defendant's Motion to Bar the Testimony and Opinions of Plaintiffs' Expert Randy Bicknese is granted.

---

[2]The Court is also concerned by Bicknese's failure to preserve his testing for inspection by Defendant's expert, particularly given the agreement between the parties to allow such inspection. See Doc. No. 35-3, p. 5 of 6 (e-mail exchange between counsel for Plaintiffs and Defendant agreeing to allow Defendant's expert, Mr. Dudden, to examine the "exemplar" grill); see also Memorandum in Support, pp. 9-10. Plaintiffs do not provide any explanation for the removal of the propane hose before Mr. Dudden could inspect the exemplar grill other than there was "no requirement" that Plaintiffs provide the propane hose. Bicknese's failure to preserve the propane hose from the exemplar grill is in contravention of the agreement of the parties (Doc. No. 35-3) and provides another basis for excluding Bicknese's testing and testimony.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Bar the Testimony and Opinions of Plaintiffs' Expert Randy Bicknese (Doc. No. 47) is **GRANTED**.

Dated this 3rd day of February, 2009.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE