UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THOMAS DUNN and THELMA DUNN, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:07-CV-01875 JCH |
| ) | |
| NEXGRILL INDUSTRIES, INC., ) | |
| ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court upon Defendant Nexgrill Industries, Inc.'s Motion for Summary Judgment (Doc. No. 105), filed on March 23, 2009. This motion is fully briefed and ready for disposition.

**BACKGROUND**

On August 24, 2006, a fire occurred at the residence of Plaintiffs Thelma and Thomas Dunn. (Amended Complaint ("Complaint" or "Compl."), Doc. No. 23, ¶¶ 5, 7). That evening, Plaintiffs had a barbeque using a Jenn-Air barbeque grill ("the grill") and stopped grilling around 7:00 p.m. Mrs. Dunn claims that she turned the burner knobs to the "off" position on the grill. Plaintiffs' daughter and granddaughter left the house around 8:20 p.m. or 8:30 p.m. Plaintiffs retired to bed around 8:45 p.m. but woke up about an hour later and discovered the fire.[1]

Plaintiffs filed a three count Amended Complaint alleging causes of action for negligence (Count I), strict liability--product defect (Count II), and violation of the Magnuson Moss Act (breach of warranty) (Count III). Id. In all three counts, Plaintiffs allege that the fire was caused by a defect in the grill, which was designed, manufactured and sold by Nexgrill Industries, Inc. (Id., ¶¶ 6, 7, 10,

---

[1]According to Plaintiffs' expert, the fire alarm went off at 9:42 p.m. (Doc. No. 42-8, p. 3).

12, 16, 18, 22). This Court struck the opinions of Plaintiffs' experts, Richard Hewitt, Dr. Lloyd Brown and Randy Bicknese (Doc. Nos. 52, 57), regarding any specific defect in the grill.

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331, n.2. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

# DISCUSSION

## I. Plaintiffs' Claims Fail Because Plaintiffs Cannot Demonstrate a Product Defect

"Under negligence or strict liability, one essential element that the plaintiff must prove in a products liability case is that the defect in the product or the negligence of the manufacturer was the proximate cause of the injuries sustained by the plaintiff while he was using the product in a reasonably intended manner." Willard v. Bic Corp., 788 F. Supp. 1059, 1063 (W.D. Mo. 1991) (noting that an essential element for causes of action under both negligence and strict liability is a defect).[2] "Missouri law requires the Plaintiffs to offer sufficient evidence to support every element of each of their claims." Pro Serv. Auto., L.L.C. v. Lenan Corp., No. 04-587, 2005 U.S. Dist. LEXIS 32161, at *33 (W.D. Mo. Dec. 12, 2005) (product liability claim). In the instant case, Plaintiffs have not provided any evidence that a proposed defect in the grill was the probable cause of the fire at Plaintiff's home.

Plaintiffs have no expert to testify that a defect in the grill caused the fire. Willard, 788 F. Supp. at 1065 (citing Klein v. General Elec. Co., 714 S.W.2d 896, 900 (Mo. Ct. App. 1986)("expert testimony that a defect in a product was the probable cause of an incident may constitute substantial evidence such that a jury could find that the incident in question resulted from a defect in a product rather than from other causes"). Plaintiffs base their claim of a defect on the affidavits of Richard Hewitt and Dr. Lloyd Brown (Plaintiffs Thomas Dunn and Thelma Dunn's Response to Defendant Nexgrill Industries['] Motion for Summary Judgment ("Response"), Doc. No. 107, pp. 7-11, 23).

---

[2]By definition, the Magnuson-Moss Warranty Act (MMWA) requires proof of a product defect. "The MMWA imposes certain minimum requirements on a warrantor of consumer products, including requirements that a warrantor remedy defects in its product within a reasonable time and without charge, and that a consumer be allowed to elect either a refund or replacement of the product after a reasonable number of attempts to remedy the defects." Sipe v. Fleetwood Motor Homes of Pennsylvania, Inc., 574 F. Supp. 2d 1019, 1024 (D. Minn. 2008) (citing 15 U.S.C. § 2304(a)(1),(4)).

In his expert report, Hewitt was able to identify the origin of the fire, but he admitted that he was not qualified to testify to what caused the ignition of the gas, and he did not know whether it was a defect in the grill that caused the fire (Doc. Noc. 50, p. 2; Doc. No. 40-4, p. 48).[3] Similarly, Dr. Brown has previously testified that the "fire originated inside the sheet metal shell of the propane gas grill that was setting [sic] on the west side deck." (Doc. No. 42-8, p. 4).[4] Although Plaintiffs may be able to point to the grill as the source of the fire, Plaintiffs have provided no evidence to support a theory that a defect in the grill caused the fire. Further, Defendant has provided expert testimony, which has not been challenged in a Daubert motion by Plaintiffs, that "[t]here is no evidence of a design or manufacturing defect with respect to the involved grill." (Doc. No. 35-4, p. 10).[5] Absent any

---

[3] Mr. Hewitt specifically stated that his "job was just to determine the origin and cause of the fire." (Doc. No. 40-4, p. 48, ll. 22-23).

[4] This Court previously struck Dr. Brown's opinion that:

> The ignition source for this fire was the burning gas leaking from a plastic hose to the gas manifold of the grill. The leaking gas became ignited from the regular cook top burner during normal usage. The burning gas eventually melted the plastic hose apart, which in turn allowed a free flow of burning gas in the lower compartment of the grill. The heat was sufficient to cause the relief valve on the supply cylinder to let go. That gas ignited and fed out the left side of the grill catching the deck and side of the house on fire. (Doc. Nos. 42-8; Doc. No. 52).

In his affidavit filed with Plaintiffs' Response, Dr. Brown asserts that the fire originated inside the barbeque grill cabinet and the available fuel source was the propane gas in the regulator house and the available heat source was the grease tray and burner operation. (Response, p. 11 (citing Exhibit 2 (Dr. Brown's affidavit), ¶ 24). Dr. Brown's opinions in his affidavit constitute expert testimony which should have been included in his expert report, if at all. Because these opinions were not included in his report or were stricken by this Court, the Court cannot consider them for purposes of this summary judgment. As noted by this Court, "Dr. Brown ... is not a mechanical engineer and does not have the background to identify a defect in the grill or to 'hypothesize[] that the ignition source of the fire had been burning gas leaking from a plastic hose to the gas manifold of the grill.'" (Doc. No. 52, p. 6).

[5] Plaintiffs attempt to utilize the testimony of Defendant's expert, Allen Dudden, for the proposition that if the regulator house is compromised and comes in contact with the grease tray then the hose can become an ignition source. (Response, p. 12). This configuration can only occur if the regulator hose is rotated 360 degrees and if the hose is compromised. (Id.) The Court has seen no

evidence of a defect, this Court cannot find a submissible case based upon Plaintiff's "guesswork, speculation or surmise." Willard, 788 F. Supp. at 1070. Accordingly, there is no evidence before this Court is that a product defect in the grill caused the fire.

## II.     Plaintiffs' Theory of a Res Ipsa Loquitor-Type Claim Also Fails

### A.     Plaintiffs Have Not Pled a *Res Ipsa Loquitor* Claim

Initially, Plaintiffs have not plead a *res ipsa loquitor* theory of liability. Absent pleading *res ipsa loquitor* liability, Plaintiffs must provide evidence to support a claim of a product defect, even in a strict liability claim. See Hughes v. American Jawa, Ltd., 529 F.2d 21, 24 (8th Cir. 1976) (where plaintiff did not allege a *res ipsa loquitor* claim, plaintiff "is required in this strict tort liability action to present sufficient evidence, either circumstantial or direct, to give rise to an inference that a defect existed in the motorcycle at the time it was originally sold by the defendant and that such defect caused the incident precipitating plaintiff's injury").

Rather, throughout this case, Plaintiffs have based their claim on the theory that the fire was caused by certain, specific defects in the grill. See Defendant's Memorandum of Law in Support of its Motion for Summary Judgment ("Memorandum in Support"), Doc. No. 106, pp. 1-2). Plaintiffs' theory is inconsistent with a pleading of negligence under *res ipsa loquitor*. "The *res ipsa loquitur* rule aids the injured party who does not know and therefore cannot plead or adduce proof showing the specific cause of or how the event which resulted in his injury occurred, but if he knows how it came to happen, and just what caused it, and either specifically pleads or proves the cause, there is neither room nor necessity for the presumption or inference which the rule affords." Bonnot v. Jefferson City, 791 S.W.2d 766, 769 (Mo. Ct. App. 1990) (citation omitted); see also Norman v.

---

evidence that such conditions were present here. Accordingly, Dudden's admissions do not preclude a finding of summary judgment.

United States, No. 1:04-CV-111, 2006 U.S. Dist. LEXIS 5519, at *14 (E.D. Mo. Feb. 13, 2006) ("The conclusion that plaintiff cannot rely on *res ipsa loquitur* is also supported by the principle that if a plaintiff pleads specific negligence, such pleading is inconsistent with and precludes reliance on res ipsa loquitur to establish a presumption of negligence.").

Here, Plaintiffs have specifically alleged that "[t]he fire was caused by a defective flexible hose in the cabinet of the Subject Grill, which permits the flexible hose to come in contact with the bottom portion fo the grill, and ignite the flexible gas line." (Compl., ¶ 7). This is not a case where Plaintiffs claim to be unable to discover the defect that forms the basis of their negligence claim. Rather, Plaintiffs consistently have asserted and identified a product defect. Plaintiffs' Complaint precludes the alternate theory of *res ipsa loquitor* because Plaintiffs allege a product defect specifically and conclusively. Plaintiffs cannot proceed, for purposes of a dispositive motion, on a alternate theory that is clearly inconsistent with the pleadings that have governed this case, particularly discovery.

B.  An "Inference" of Product Defect Is Not Warranted in this Case

Plaintiffs claim that they are only seeking an "inference" of a product defect based upon the circumstances, which does not require the aid of expert witness testimony. (Response, pp. 21-22). "To prove a product liability claim by inference from circumstantial evidence without proof of a specific defect, a plaintiff must offer evidence that (1) tends to eliminate other possible causes of the injury or property damage, (2) demonstrates that the product was in the same basic condition at the time of the occurrence as when it left the hands of the defendants, and (3) the injury or damage is of a type that normally would not have occurred in the absence of a defect in the product. Hickerson v. Dist. Pride Mobility Prods. Corp., 470 F.3d 1252, 1258 (8th Cir. 2006) (citing Fain v. GTE Sylvania, Inc., 652 S.W.2d 163, 165 (Mo. Ct. App. 1983); Lindsay v. McDonnell Douglas Aircraft Corp., 460 F.2d 631, 637-59 (8th Cir. 1972)).

Plaintiffs have failed to satisfy this test. Plaintiffs have not demonstrated this the fire is an injury or damage that normally would not have occurred in the absence of a product defect. See Willard, 788 F. Supp. at 1069 (where the purpose of the product is to produce a flame other causes may be more probable causes than a product defect). The grill is *ipso facto* combustible and, therefore, could be the source of the fire absent a defect.

C. The Case Law Cited by Plaintiffs is Inapposite

Plaintiffs cite to several "*res ipsa*-type"[6] cases to support their theory that this case can be submitted to the jury without a expert testimony as to a defect in the grill. The cases cited by Plaintiffs, however, can be distinguished because none involve a flammable product, like a grill, that could be the origin of a fire absent a product defect.

1. Winters v. Sears, Roebuck & Co.

Plaintiffs cite to Winters v. Sears, Roebuck & Co., 554 S.W.2d 565 (Mo. Ct. App. 1977) to support its theory. In Winters, the court noted that a television set would not become inflamed absent a product defect. The court stated that "[t]he existence of a defect may be inferred from circumstantial evidence with or without the aid of expert opinion evidence." Id. at 569 (citing Williams v. Ford Motor Co., 411 SW2d 443, 447(Mo. Ct. App. 1966)). The plaintiff's expert, while not identifying a specific defect, testified "concerning the workings of the picture tube and surrounding components, including the location and characteristics of a heating coil in the neck of the tube." Id. at 571. Based upon this knowledge and his observation of the damage sustained, the plaintiff's expert "testified that the defect in the heating element at the small end of the tube was the most probable cause of the fire." Id. The court held that the plaintiffs presented sufficient evidence,

---

[6]The Eighth Circuit refers to these types of cases where causation may be inferred as a "res ipsa-type" theory. Hickerson, 470 F.3d at1258.

apart from the fact of the fire itself, from which a jury could infer the existence of a defect near the small end of the picture tube." Id. at 570-71.

Unlike in Winters, Plaintiffs have not provided an expert that can identify the probable cause of the fire. Further, Plaintiffs have not provided any evidence that the fire at issue could not have occurred absent a defect in the grill. The grill, unlike a television, can produce a flame without a defect. Cf. Willard, 788 F.Supp. at 1069 ("unlike a television set, the very purpose of a cigarette lighter is to produce a flame and plaintiff's alleged experts have not shown that a malfunction of the lighter was the more reasonable probable cause of the accident"). Without an expert opinion regarding the defect and without a finding that this accident could not have occurred absent a defect, Plaintiffs cannot rely on Winters to withstand Defendant's summary judgment motion.

2. Fain v. GTE Sylvania, Inc., Klein v. General Electric Co. and Hickerson v. Dist. Pride Mobility Prods. Corp.

The Fain plaintiff alleged a cause of action for strict products liability against the manufacturer of a television set. Fain v. GTE Sylvania, Inc., 652 S.W.2d 163, 164 (Mo. Ct. App. 1983). The Assistant Fire Chief determined that the cause of the fire was "possibly the television set." Id. The court determined that the jury could have found the television set defective absent any proof of a specific defect. Id. at 165. The Fain court affirmed the jury verdict of the trial court because "common experience tells us that some accidents do not ordinarily occur in the absence of a defect and in those situations the inference that a product is defective is permissible." Id. (citing Winters v. Sears, Roebuck & Co., 554 S.W.2d 565, 569 (Mo. Ct. App. 1977)).

Plaintiffs also cite to Klein v. General Electric Co., 714 S.W. 2d 896 (Mo. Ct. App. 1986). In Klein, the plaintiffs' home caught fire. The city's fire chief and the plaintiff's expert determined that the fire started with the coffeemaker. Id. at 900. The plaintiffs' experts were unable to pinpoint a defect in the Klein's coffeemaker because it was destroyed in the fire. Id. The experts negated

causes of the fire, other than a defect in the coffeemaker. Id. The court affirmed the jury verdict in favor of the plaintiffs because "there was sufficient evidence presented that a jury could find that the coffeemaker was defective when sold by the defendant and that the coffeemaker had been put to a reasonably anticipated use." Id. at 901.

The plaintiff alleged that a motorized scooter was defective and caused a fire in his home. Hickerson v. Dist. Pride Mobility Prods. Corp., 470 F.3d 1252, 1253-54 (8th Cir. 2006). The plaintiff's expert provided testimony that the motorized scooter was the point of origin of the fire, but could not testify as to any particular defect. Id. at 1257. The court held that it was permissible for the plaintiff's expert to testify that, through process of elimination, he determined the scooter to be the cause of the fire. Id. at 1257-58. The court also noted that there was only one powered appliance at the point of origin and that the spontaneous ignition of a battery-powered scooter would not occur absent a product defect. Id. at 1260. The Hickerson court reversed the trial court's grant of summary judgment in favor of defendant.

These cases do not support Plaintiffs' case. As seen in the analysis of Winters, the products in Fain, Klein and Hickerson (television, coffeemaker and scooter) do not combust absent a defect. Here, "common experience" tells us that a grill is designed for ignition and combustion, and a fire could result without a defect in the product. In the instant case, expert testimony or probative evidence is required to show that a specific defect caused the fire. Accordingly, Fain, Klein and Hickerson do not support a finding of a submissible case absent expert testimony regarding a defect in the grill.

### III.  Conclusion

Plaintiffs have not provided any evidence to support a claim that Defendant's grill was defective and caused the fire. Plaintiffs have always proceeded on a theory of a specific product defect in the grill. Suddenly without expert testimony to support their theory, Plaintiffs cannot proceed under an alternate theory that was not pleaded, not pursued in discovery, and is inconsistent with the Complaint. Further, the Court cannot find an inference of a defect because Plaintiffs have not provided any evidence that this is the type of occurrence that would not happen absent a product defect. Thus, Defendant's Motion for Summary Judgment is granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 105) is **GRANTED**, and Plaintiffs' claims are dismissed with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

**IT IS HEREBY FURTHER ORDERED** that Defendant's Motions in Limine (Doc. Nos. 75, 83, 84, 85, 86 and 87) are **DENIED** as moot.

**IT IS HEREBY FURTHER ORDERED** that Plaintiffs' Motions in Limine (Doc. Nos. 77, 78, 79, 80, 81, 82) are **DENIED** as moot.

Dated this 23rd day of June, 2009.

/s/ Jean C. Hamilton

UNITED STATES DISTRICT JUDGE